OPINION OF THE COURT
Scott Faibgbieve, J.
Petitioner RMS Residential Properties, LLC brought this post-foreclosure holdover proceeding against respondents Matthew Naaze, also known as Matthew Nazze, and Missy Thompston with a return date of December 28, 2009. RMS requests final judgment of possession of the subject premises located at 971 Kings Parkway, Baldwin, New York 11550; the issuance of a warrant of eviction; legal fees, costs and disbursements; and a money judgment for the fair value of use and occupancy of the subject premises. The fair value is not declared in the petition.
Respondent Missy Thompson (misspelled Thompston in the caption) filed an answer on March 1, 2010 claiming to be the sole adult occupant of the premises pursuant to a written lease dated February 2, 2009. Respondent’s first affirmative defense is that RMS is a foreign limited liability company that is not duly authorized to do business in the State of New York and is, therefore, prohibited from maintaining this proceeding under Limited Liability Company Law § 808 (a). The second affirmative defense is that respondent’s tenancy is protected under the Federal Protecting Tenants at Foreclosure Act of 2009, which *845 provides that a bona fide tenant is entitled to occupy the property pursuant to a bona fide lease entered into before the notice of foreclosure.
RMS moved for summary judgment against respondent Missy Thompson on March 1, 2010, requesting the following relief: to strike the answer interposed on behalf of the respondent; to award petitioner use and occupancy of $2,500 per month, pro rata, representing the fair market rent for the premises, as of the return date of the within motion through to and including the date this court determines the respondents must vacate the subject premises.
Respondent opposed and cross-moved on April 26, 2010 for denial of RMS’s motion and granting summary judgment in favor of respondent Missy Thompson, allowing her to occupy the premises pursuant to the lease which expires by its own terms on February 15, 2011. The basis of the cross motion is the affirmative defenses raised in respondent’s answer.
Petitioner opposed respondent’s cross motion on May 7, 2010 and respondent replied on May 27, 2010.
Facts
On June 26, 2007, Matthew Naaze executed a note secured by a mortgage on the subject premises. RMS subsequently took assignment of the mortgage and on January 4, 2008 filed a notice of pendency and commenced a foreclosure proceeding. A final judgment was granted in favor of RMS and against Matthew Naaze on September 2, 2008. A foreclosure sale was held on July 28, 2009 by which RMS took title to the property; a referee’s deed was executed on July 30, 2009.
On February 2, 2009, after the notice of pendency and foreclosure judgment, Matthew Naaze entered into a two-year lease with Missy Thompson in the amount of $900 monthly, expiring February 15, 2011.
RMS served a 90-day notice to quit on Missy Thompson on September 2, 2009. As of December 1, 2009, Thompson did not vacate the subject premises and RMS brought this holdover proceeding with an initial return date of December 28, 2009. On March 23, 2010, RMS filed the instant motion for summary judgment seeking (1) judgment of possession; (2) Ms. Thompson’s answer be stricken and; (3) use and occupancy in the amount of $17,500.
*846 Cross Motion
The court will first address respondent’s cross motion because it raises the issue of whether RMS is authorized to maintain this proceeding. Respondent alleges that RMS does not hold a certificate of authority to do business in New York. Limited Liability Company Law § 808 provides:
“(a) A foreign limited liability company doing business in this state without having received a certificate of authority to do business in this state may not maintain any action, suit or special proceeding in any court of this state unless and until such limited liability company shall have received a certificate of authority in this state.”
Additionally, Business Corporation Law § 1312, actions or special proceedings by unauthorized foreign corporations, states:
“(a) A foreign corporation doing business in this state without authority shall not maintain any action or special proceeding in this state unless and until such corporation has been authorized to do business in this state and it has paid to the state all fees and taxes imposed under the tax law or any related statute, as defined in section eighteen hundred of such law, as well as penalties and interest charges related thereto, accrued against the corporation. This prohibition shall apply to any successor in interest of such foreign corporation.
“(b) The failure of a foreign corporation to obtain authority to do business in this state shall not impair the validity of any contract or act of the foreign corporation or the right of any other party to the contract to maintain any action or special proceeding thereon, and shall not prevent the foreign corporation from defending any action or special proceeding in this state.”
Section 1312 of the Business Corporation Law constitutes a bar to the maintenance of an action by a foreign corporation found to be “doing business” in New York without the required authorization to do business there. However, the application of this statutory bar may only be effected when it has been raised as an affirmative defense (CPLR 3018 [b]), and the burden of proof is placed upon the party asserting the same (Dixie Dinettes v Schaller’s Furniture, 71 Misc 2d 102 [Civ Ct, Kings County 1972]).
RMS is “doing business” in New York as exhibited by the 25 foreclosure actions it has brought in New York since 2007 (ex *847 hibit K, respondent’s cross motion). Respondent raised the issue of whether RMS is authorized to do business in New York as an affirmative defense pursuant to CPLR 3018 (b), thus the court may address the issue.
RMS states that by virtue of being a wholly owned subsidiary of Residential Mortgage Solution, LLC it is authorized to do business in New York because its parent is authorized.
In Dixie Dinettes v Schaller’s Furniture (71 Misc 2d 102 [1972]) the Kings County Civil Court found that a foreign corporation’s merger into a licensed foreign corporation did not relieve it from obligations imposed by statute barring access to court by a corporation which has not paid all fees, penalties and franchise taxes. The court wrote:
“Our examination of the authorities revealed no reported cases which relieve a foreign corporation, doing business here, from the inaccessibility to our courts without proof of payment of such taxes, fees, et cetera even though that corporation has made delivery of the goods to the defendant and may be otherwise entitled to recover.” (Id. at 104; see Plasticrete Corp. v Nuovo Corp., 59 Misc 2d 1097 [1969].)
Therefore, the subsidiary corporation, RMS, does not receive the benefit of its parent corporation’s certificate of authority. Respondent has met her burden in establishing that RMS may not maintain this action. However, the current lack of authorization to do business in New York does not impair the validity of RMS’s ownership of the subject premises or any contracts it may have executed (see Limited Liability Company Law § 808 [b]). It does, however, prevent this proceeding from going forward. Therefore, the proceeding is stayed until RMS receives a certificate of authority from the Secretary of State (see FIA Card Servs., N.A. v DiLorenzo, 22 Misc 3d 1127[A], 2009 NY Slip Op 50305[U] [Nassau Dist Ct 2009]; see also McIntosh Bldrs. v Ball, 247 AD2d 103 [3d Dept 1998]).
Respondent’s second affirmative defense and second argument in her cross motion is that her tenancy is protected by the Federal Protecting Tenants at Foreclosure Act of 2009 and the lease should be upheld by the court, allowing respondent to occupy the premises pursuant to its terms.
The Federal Protecting Tenants at Foreclosure Act of 2009 (Pub L 111-22, div A, tit VII, § 702 [b], 123 US Stat 1661 [codified at 12 USC § 5220 Note]) defines a bona fide tenant as follows:
*848 “(b) Bona fide lease or tenancy. — For purposes of this section, a lease or tenancy shall be considered bona fide only if—
“(1) the mortgagor or the child, spouse, or parent of the mortgagor under the contract is not the tenant;
“(2) the lease or tenancy was the result of an arms-length transaction; and
“(3) the lease or tenancy requires the receipt of rent that is not substantially less than fair market rent for the property or the unit’s rent is reduced or subsidized due to a Federal, State, or local subsidy.”
Under the terms of the statute, respondent has failed to prove that she is a bona fide tenant (see U.S. Bank N.A. v Hurtado, 27 Misc 3d 933 [2010]).
RMS claims the fair market value rent is $2,500 per month while respondent claims that $1,550 is “substantially within the realm of other rentals in the area.” Accepting respondent’s claim as to the fair market rent ($1,550), she pays only $900 per month, a substantial 42% discount. In her briefing papers, respondent alleges that utility and lawn maintenance payments of $650 per month should be considered rent, bringing the $900 base rent to. $1,550. However, the lease does not provide for these expenses as additional rent. Thus, respondent’s rent is $900 per month as per the lease and rent receipts.
The lease is also not bona fide under the federal statute, which reads:
“(a) In general. — In the case of any foreclosure on a federally-related mortgage loan or on any dwelling or residential real property after the date of enactment of this title, any immediate successor in interest in such property pursuant to the foreclosure shall assume such interest subject to—
“(1) the provision, by such successor in interest of a notice to vacate to any bona fide tenant at least 90 days before the effective date of such notice; and
“(2) the rights of any bona fide tenant, as of the date of such notice of foreclosure—
“(A) under any bona fide lease entered into before the notice of foreclosure to occupy the premises until the end of the remaining term of the lease, except that a successor in interest may terminate a lease effective on the date of the sale of the unit to a purchaser who will occupy the unit as a primary *849 residence, subject to the receipt by the tenant of the 90 day notice” (Pub L 111-22, div A, tit VII, § 702, 123 US Stat 1660-1661 [Effect of Foreclosure on Preexisting Tenancy] [emphasis added]).
This court held in U.S. Bank N.A. v Hurtado and Deutsche Bank Natl. Trust Co. v Tulloch (27 Misc 3d 1170 [Nassau Dist Ct 2010]) that the notice of pendency is the equivalent of the notice of foreclosure. The lease was executed on February 2, 2009 and commenced on February 15, 2009, over one year after the notice of pendency was filed on January 4, 2008 and over five months after the judgment of foreclosure was granted on September 2, 2008.
Therefore, respondent’s second argument is without merit.
Petitioner’s Motion
RMS’s request to strike respondent’s answer is without basis and denied..
In its motion, RMS has exhibited a judgment of foreclosure and sale of the subject premises (exhibit C), a referee’s deed by which RMS took title to the property (exhibit E) and a 90-day notice to vacate (exhibit E) which respondent admits to receiving in her answer. RMS has, therefore, established that it is the lawful owner of the subject premises and respondent has held over since December 1, 2009.
The court cannot, however, grant any relief to petitioner because petitioner is not authorized to conduct business in this state as required by Limited Liability Company Law § 808 (a). Petitioner has until July 30, 2010 to demonstrate to this court that petitioner has properly complied with all requirements of New York State that it is properly licensed to operate in New York. Failure to comply with the foregoing shall result in dismissal of the within proceeding with prejudice.